Judgment rendered February 28, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,654-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

WHITNEY LEO TRIPP                    Plaintiff-Appellant

versus

GEISHA NATHALIEE                     Defendant-Appellee
GUITERREZ GENER

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Webster, Louisiana
Trial Court No. 79,732

Honorable R. Lane Pittard, Judge

* * * * *

KITCHENS LAW FIRM                    Counsel for Appellant
By: Paul E. Kitchens
    Graydon K. Kitchens
    P. Nelson Smith, Jr.

MARK J. MICIOTTO                     Counsel for Appellee

* * * * *

Before COX, THOMPSON, and HUNTER, JJ.

**THOMPSON, J.**

A Louisiana man met a Venezuelan woman on the internet, and the two soon married and established their matrimonial domicile in Miami, Florida, where he could manage his Bahama business interests, she could be closer to her family, and live in a large, diverse bilingual community. While in Miami, the couple had a child. When the child was three years old, the father, without prior notice to the mother and under the guise of going to visit his family, moved with the child back to Louisiana. After various untruths regarding his intent and timeline to return to Miami and after meeting minimum residency requirements, he filed for divorce and child custody in Louisiana.

After a custody trial, the trial court ordered joint custody and established an alternating six-month custody plan for the parents, which the father appealed. On the first appeal, this Court upheld the joint custody determination but remanded the matter to the trial court to revise the alternating six-month visitation plan. On remand, there was a second trial, at the conclusion of which the trial court maintained joint custody, but designated the mother as domiciliary parent, with the father, who lives in Sarepta, Louisiana, to receive significant visitation periods. The father appeals this most recent judgment. For the reasons set forth in more detail below, we do not find an abuse of discretion and affirm the trial court's ruling.

## FACTS AND PROCEDURAL HISTORY

The extensive facts of this fiercely contested custody matter are set forth in this court's previous opinion in *Tripp v. Gener*, 55,132 (La. App. 2

Cir. 4/26/23), 362 So. 3d 1265, and are not repeated in detail here. In sum, Whitney Tripp ("Tripp") and Geisha Gener ("Gener") met on "Latin America Cupid" in July of 2017, and were married on March 18, 2018, in Claiborne Parish, Louisiana, and subsequently moved to Miami, Florida, later that year. Gener had previously been living in Venezuela. On January 14, 2019, their only child, B.T., was born. Gener is a citizen of Venezuela and is working on obtaining her American citizenship. Gener worked in a medical lab in Venezuela and now owns her own spa business in Miami, Florida. Gener primarily speaks Spanish, and the availability of a quality bilingual curriculum for the minor child is a significant consideration of the parties as the relationship deteriorated and became a matter of litigation.

Tripp owns a company that provides WI-FI to tourists in the Bahamas. Tripp told Gener that he was taking B.T. for a two-week stay in Louisiana in May of 2021, but he never returned the child to Florida. Tripp filed for divorce in Louisiana on December 20, 2021. The parties disagreed as to which parent would serve as primary domiciliary parent, necessitating a trial on the matter. At the conclusion of that trial, the trial court granted the parties joint custody of B.T. (who was not yet old enough to attend school) and ruled that she would spend six months with each parent. Tripp appealed that judgment.

In our previous opinion, this Court found that the trial court took great care in analyzing the La. C.C. art. 134 factors and agreed with the trial court that joint custody was in the best interest of B.T. However, we noted that six-month alternating visitation has been found by Louisiana courts to be a substantial disruption to the future education and social development of a

2

child.  This Court noted that the cultures between the two homes are substantially different given that one is in Miami and primarily Spanish-speaking and the other is in Sarepta, Louisiana and is English-speaking.  We noted, "there was much discussion at trial about the language to which B.T. was primarily exposed in both Miami and Sarepta. We applaud the trial court for ensuring the child be raised bilingual in order to communicate with all of her family."  The trial court's judgment was affirmed insofar as there was a determination of joint custody between the parents, but we vacated that portion of the judgment setting forth a rotating six-month visitation schedule.  The matter was remanded to the trial court with instructions to confect a joint custody implementation order and name a domiciliary parent in accordance with the provisions of La. R.S. 9:335 and conduct any necessary further proceedings consistent with the views expressed within the opinion.

The second custody trial was held on June 13, 2023, in accordance with this Court's opinion.  At trial, the court limited evidence and testimony to the time frame between the first trial and this second trial in order to determine the joint custody plan for B.T.  Tripp testified that the parties had improved their communication and co-parenting relationship.  Tripp detailed how he purchased two Facebook portals for himself and Gener, which would allow a camera to follow B.T. around the room while she was on a video call.  He drove B.T. to Dallas and Houston on weekends when Gener would visit B.T. so that Gener would not have to travel the additional distance to Louisiana.  Tripp testified that he provided Gener with an additional ten days

3

of visitation on two separate occasions, which Gener testified that she would reciprocate.

Tripp testified that he is concerned about communication between himself and Gener regarding B.T.'s medical issues, including a time when she received three stitches on her forehead and visitation with a behavioral therapist. Tripp is further concerned with the people Gener has babysitting B.T. on the Saturdays that she has to work. Tripp stated that he is concerned with Gener posting photos of B.T. on her social media pages and adding Gener's last name onto B.T.'s surname. Tripp has registered B.T. for pre-k classes at a new Christian school where his mother is scheduled to teach.

On cross-examination, Tripp admitted that the school is new and has 47 prospective students enrolled for pre-k through 12th grade. Tripp also testified that all students from pre-k to 6th grade only attend school from 8:30 to 2:30 Monday through Wednesday. He stated that on the days that B.T. is not in school, he is trying to find a Spanish tutor for her because her mother's family only speaks Spanish. Finally, he testified that while on a video call with B.T., he could see alcohol bottles when the trial court's order stated that neither parent should drink in the child's presence.

Gener testified that she does not drink and the bottles Tripp saw during a video chat were from a neighboring party that she was not attending. Gener testified that she loves and misses her daughter when she is not in Miami. Gener has enrolled B.T. in a pre-k program at a good public school near her home in Miami. She testified that the school is bilingual and that B.T. will learn English at school and Spanish at home. Gener further testified that her mother has moved from Venezuela to stay with her and

4

B.T. in Miami and that her mother helps her care for B.T. while she is at work. She and her mother speak in Spanish at home and teach B.T. Spanish. Gener admitted that she did not initially tell Tripp about B.T.'s stitches but apologized for not doing so. She disagreed with Tripp that she did not notify him about the behavioral therapist and stated that he participated in several sessions with the behavioral therapist for B.T. Gener complained that she believes Tripp does not take care of B.T.'s hygiene while she is with him, citing her dirty fingernails when she returns to Miami. Gener has signed B.T. up for ballet and tumbling classes in Miami, which she is enjoying.

Both parents testified that they believed the other to be a good, loving parent for B.T. The trial court also had the benefit at the second trial of hearing testimony from both Tripp's mother and Gener's mother. Tripp's mother testified that Tripp and B.T. live with her and her husband in Sarepta, Louisiana, and that she will be a teacher at B.T.'s new school in Louisiana. Gener's mother testified that she cooks and plays with B.T. when she is in Miami and she plans to stay in the United States if she is able.

The trial court took the testimony and evidence under advisement. In its ruling, the trial court stated that it was incorporating its earlier opinion, including its analysis of the Article 134 factors, into the current opinion. The court stated that none of the new testimony or evidence presented altered its original opinion regarding custody of B.T. The trial court appointed Gener as the domiciliary parent and that B.T. will go to school in Miami, Florida. The court's custody schedule also provided Tripp with significant visitation, including: (1) each summer from the Saturday after school releases and return her 14 days before school resumes; (2) during

5

B.T.'s fall and spring breaks; and (3) Tripp was given an additional 20 days of visitation, as long as it does not interfere with B.T.'s school schedule. The parties will also alternate Christmas and Thanksgiving holiday visitation each year. Each parent has the right to weekend visitation, as long as the other parent is given one week's notice. From this new custody schedule and judgment, this appeal by Tripp followed.

## DISCUSSION

In his sole assignment of error, Tripp argues that the trial court erred in failing to name him as the primary domiciliary parent of B.T. Tripp asserts the trial court made its decision on domiciliary parent based solely on his opinion that the school in Miami was better than the school in Louisiana.

The paramount consideration in any determination of child custody is the best interest of the child. La. C.C. art. 131; *Abrams v. Turner*, 52,922 (La. App. 2 Cir. 9/25/19), 282 So. 3d 304. This determination requires a weighing and balancing of factors favoring or opposing custody in respective competing parents on the basis of evidence presented in each particular case. *Abrams*, *supra*. The non-exclusive list of relevant factors to be considered in determining the best interest of the child found in La. C.C. art. 134 are:

> (1) The love, affection, and other emotional ties between each party and the child.
>
> (2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
>
> (3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

6

(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(6) The moral fitness of each party, insofar as it affects the welfare of the child.

(7) The mental and physical health of each party.

(8) The home, school, and community history of the child.

(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.

(11) The distance between the respective residences of the parties.

(12) The responsibility for the care and rearing of the child previously exercised by each party.

While the court is not bound to make a mechanical evaluation of all the statutory factors listed in La. C.C. art. 134, it should decide each case on its own facts in light of those factors. Nor is the court bound to give more weight to one factor over another rather when determining the best interest of the child, the factors must be weighed and balanced in view of the evidence presented. *Abrams*, *supra*. The factors are provided as a guide to the court, and the relative weight given to each factor is left to the discretion of the trial court. *Id.* The trial court's finding that joint custody is in the best interest of the child does not necessarily require an equal sharing of physical custody. *Id.* Substantial time rather than strict equality of time is mandated by the legislative scheme providing for joint custody of children. *Id.*

The trial court has great discretion in child custody cases based on its opportunity to better evaluate the credibility of witnesses. Accordingly, the trial court's determination of custody issues is afforded great weight and will not be disturbed on appeal absent an abuse of discretion. *Id.*

As this Court has noted:

> In child custody cases where two parents are fervently competing for custody and domiciliary status of the children, frequently the trial court must determine the best interest of the children solely from the testimony of the parents and their respective relatives or friends. This naturally passionate and self-interested testimony is rarely objective, leaving it to the trial court, who is in the best position to view firsthand the demeanor and tone of the witnesses, to assess the credibility of witnesses and decide how much weight to give the testimony in light of the factors of La. C.C. art. 134.

*Abrams*, *supra*.

Considering the testimony and evidence available to the trial court, we do not find its ruling to be an abuse of its discretion. As noted in our earlier opinion, the trial court took great care in analyzing the Article 134 factors in its first written reasons for judgment, which it incorporated into the current proceedings. The trial court heard the witnesses and reviewed the evidence provided by each party, and it is in the best position to assess the credibility of witnesses and weigh the factors of Article 143. The trial court devoted significant attention to the applicable factors in its consideration of fixing custody of a young child between two caring parents.

We do not agree with Tripp's argument that the trial court erroneously focused only on the potential bilingual nature of the school in Miami. Rather, the trial court clearly analyzed the evidence and witnesses presented at the trial on this matter and, together with its earlier opinion, determined that Gener will be the domiciliary parent, with *significant* visitation for

8

Tripp. When confronted with divorcing parents, living in different locations, who cannot arrive at a mutually agreeable custody arrangement on their own, the trial court is charged with the difficult task of crafting a custody arrangement. Under these litigious and acrimonious circumstances, it is all but a certainty whatever plan is crafted will not completely satisfy either parent. While the different schools were a factor discussed at trial, the court clearly reviewed its previous Article 134 analysis and *all* of the new information presented by the parties, in creating a custody plan necessitated by the choices made by the parents to divorce and move away from each other.

Our review of the argument, testimony, and evidence in the record does not reveal anything that would render the trial court's ruling an abuse of discretion. While the parties had relatively minor complaints about the other parent, they each admitted that the other parent was a caring, loving, and competent parent to B.T. Therefore, we conclude that the trial court did not abuse its discretion by awarding Tripp and Gener joint custody and by naming Gener as the domiciliary parent. Accordingly, this assignment of error is without merit.

## CONCLUSION

For the foregoing reasons, we affirm the judgment awarding joint custody to each parent and naming Geisha Gener as domiciliary parent, and affording significant visitation for Whitney Leo Tripp. Appellate costs are assessed to Whitney Leo Tripp.

**AFFIRMED.**

9